CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 30, 2024
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE  DIVISION

| | | |
|---|---|---|
| **MATTHEW A. WIMER,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:22CV00110 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD W. CLARKE,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Respondent. | ) | |

*Matthew A. Wimer, Pro Se Petitioner; Matthew P. Dullaghan, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Respondent.*

Petitioner Matthew A. Wimer, a Virginia inmate proceeding pro se, has initiated this habeas corpus proceeding under 28 U.S.C. § 2254, in which he challenges his convictions and 23-year sentence arising from an incident in which he fired a handgun at a vehicle containing his estranged wife and wounding two of the occupants.  The respondent has filed a Motion to Dismiss to Wimer's Second Amended Petition (hereafter, Petition), and Wimer has responded, making the matter ripe for resolution.[1]  After review of the parties' submissions and pertinent

---

[1]  In March 2024, I construed a letter from Wimer as seeking additional time to further respond to the Motion to Dismiss and granted him 30 days to do so.  Wimer then asked for a copy of his state habeas petition, which the court provided to him, and further granted him until June 9, 2024, to file any additional response.  He has filed no additional response and the time allotted for such a response has elapsed.  Therefore, the Motion to Dismiss is ripe for consideration.  Recently Wimer filed a piece of additional evidence, ECF No. 46, which I have considered.

state court records, I conclude that the Motion to Dismiss must be granted and the Petition denied.

## I. BACKGROUND.

The following factual summary is taken largely from the statement of facts offered in support of Wimer's guilty pleas and from the testimony at his sentencing.

On August 4, 2016, Christine Campbell gave a ride to Casey Wimer (Casey), Wimer's estranged wife. A third woman, Misti Carter, was in the front passenger seat and her infant was in a car seat behind the driver. When Campbell stopped the car to offer Casey a ride, Casey appeared distraught and indicated that she and Wimer had been fighting. Casey got into the back passenger seat of Campbell's car. After driving and talking a while, Casey indicated that she wanted to go home. Although Casey said she was afraid of Wimer, she told the women that she did not believe he would try anything while other people were present.

When the car arrived at the Wimer home, Wimer was outside the house, and the two Wimer boys were also there, riding their bikes. Casey opened the back passenger door and stepped out of the car, while the others stayed in the vehicle. He then twice waived a gun at the car. Casey jumped back in the car as Campbell was driving away and Wimer began firing. Carter testified that she heard Wimer fire four shots, all of which hit the car. The back window shattered. Broken glass

fell on and injured the infant.  A piece of some material hit Campbell in the head and lodged in her hair, but she was able to keep driving.  Carter called police who met the group at a nearby gas station.

After law enforcement apprehended Wimer, he claimed that he had not fired at the car, but instead, had fired two shots into the air and two shots into the ground.  He has also claimed, through counsel, that he fired his gun because he perceived the car as a threat, because it had passed his house twice and then pulled quickly in the driveway as though no one wanted to get out.  Counsel also asserted that Wimer was unaware of the number of people in the car or that a baby was in the backseat.

In March 2017, a grand jury in the Circuit Court of Augusta County returned eight separate indictments against Wimer based on this incident.  He was charged with attempted malicious wounding of Casey; attempted malicious wounding of Misti Carter, malicious wounding of the infant; malicious wounding of Christine Campbell; shooting at Christine Campbell during the commission of a felony; use of a firearm in commission of malicious wounding; and two counts of maliciously shooting into an occupied vehicle.[2]

---

[2]  The digital copies of the circuit court's records originally submitted to this court by the respondent, ECF No. 22, clearly show that eight indictments were returned against Wimer, but did not include a copy of Indictment No. CR17000106-00, charging the attempted malicious wounding of Casey.  This court has obtained a copy of that

At a plea hearing before the circuit court on July 5, 2017, the Commonwealth moved to dismiss the charge involving Wimer's wife, Casey. The presiding judge asked, "Is that one of the Malicious Woundings?" and the prosecutor said yes. Mem. Supp. Mot. Dismiss Ex. C, at 3, ECF No. 30-3.[3] The judge guessed incorrectly at the indictment number: "10601." *Id.* In fact, the Indictment to which Wimer did not plead guilty and that was later dismissed was No. CR17000106-00, charging Wimer with the attempted malicious wounding of Casey.[4]

The judge asked Wimer if he had had an opportunity to confer with counsel about pleading guilty, and Wimer stated, "Yes sir." *Id*. at 6. The court then read the Indictment charging Wimer with attempted malicious wounding of Casey Wimer. The prosecutor said, "That is most certainly my mistake, but that's the only one to which he's not pleading." *Id.* at 7. The court then arraigned Wimer on

---

document from the state court, and I will direct the Clerk to file it on the docket of this case.

[3] Citations to the record herein use the document numbers and page numbers assigned by the court's electronic filing system.

[4] Wimer makes much of the court's statement during the plea hearing, asking the clerk to "set aside" the indictment involving Casey, who had been subpoenaed to the hearing but did not appear. Mem. Supp. Mot. Dismiss Ex. C, at 5–6, ECF No. 30-3. Later discussions during the plea hearing, however, clarify that the plea bargain involved dismissal of the Indictment involving Casey. The judge's statement asking the clerk to set that Indictment aside has no bearing on the verbal plea bargain reached by the parties, as described by the prosecutor and affirmed by Wimer as the hearing proceeded and he pleaded guilty to the seven other indictments.

the other seven indictments, and Wimer entered a plea of guilty as to each of those seven charges.

The judge verified Wimer's birth date, education level, and ability to understand, read, and write the English language.  Wimer denied being under the influence of drugs or alcohol and verified that he understood the charges against him that the court had just read.  When the judge asked if Wimer was freely and voluntarily entering his pleas of guilty, Wimer answered, "I was told if I didn't, I got more charges."  *Id.* at 12.  The judge then verified that Wimer had sought counsel's advice about the matter, and Wimer affirmed that he was entering his pleas freely and voluntarily, because he was, in fact, guilty.  When the judge asked Wimer if anyone had "attempted to intimidate" or "coerce" him into pleading guilty, Wimer said, "No, I was just told that if I didn't plead guilty I would be charged, more charges."  *Id.* at 14.  The judge directed Wimer to confer with counsel.  Wimer said, "I was intimidated whenever they said how many years I would be facing if I did not."  *Id.*

At this point, defense counsel stated:

He's currently charged with the charges he was arraigned on and one he wasn't arraigned on.  Under case law, the Commonwealth could charge a use of a firearm in the commission of a felony second offense because he's already charged with one for [sic] three of the other felonies they haven't charged. . . .

And the Commonwealth's position is that if [Wimer doesn't] enter a plea today, we ha[ve] a Bench Trial set, if a plea [isn't] entered today

> or the matter [isn't] resolved today and [gets] postponed, he [is] going
> to add three additional indictments and those three charges carry a
> mandatory minimum of fifteen years. . . . [T]he occupants of the
> vehicle aren't here and because they are not here, of course that would
> give any defendant cause before pleading to these serious charges
> without a victim here, it's a gamble we take, entering a plea today
> with a three year mandatory minimum, if the Commonwealth follows
> through on their statement that they will bring additional charges and
> we come back and witnesses are here and he's convicted, his
> mandatory minimum goes from three years up to eighteen years.

*Id.* at 14–15.  Defense counsel continued, "And that is viewed by my client as a

threat, but I have told him in discussions that it may seem like a threat, but it's a

not an unlawful action on the Commonwealth's part, it's something they can do or

not do." *Id.* at 15.  "He feels that if he doesn't take the plea, more consequences

will come so that could be viewed as a threat . . . . and he's thought about it to

weigh his options on it and that's why he's pleading today because he knows what

could be coming if the Commonwealth follows through on what they say and the

victims show up for trial." *Id.*

The judge then asked Wimer, "So you have voluntarily entered the plea

today?" and Wimer replied, "Yes sir." *Id.*  The court asked, "That is based on

information that was given to you, you made the best decision you could make

today, is that correct?" and Wimer replied, "Yes sir." *Id.* at 16.  The judge said,

"And you did that voluntarily?" and Wimer replied, "Yes sir." *Id.*  The parties

then agreed that Wimer had not entered into a written plea agreement or a joint

recommendation as to sentencing, and Wimer confirmed his understanding of that

fact.  *Id.* at 17.  The judge then asked Wimer if he understood the charges to which he was pleading guilty carried a maximum sentence of over one hundred years, and Wimer affirmed that he understood.[5]  Wimer also stated that he was satisfied with the services of his attorney, that he understood he was waiving various rights by pleading guilty, and that the court was not bound by the sentencing guidelines. Counsel repeated, "there was never a plea agreement other than the fact the Commonwealth upon these seven guilty pleas would be moving to nol pros [sic] the eighth charge and not bring the additional gun charges."  *Id.* at 19.

The judge accepted Wimer's guilty pleas as knowing and voluntary.  After hearing a statement of facts in support of the guilty pleas, the court then granted the prosecutor's motion for dismissal of the indictment charging Wimer with attempted malicious wounding of Casey Wimer.[6]  *Id.* at 27.

The circuit court conducted a sentencing hearing on November 17, 2017. The prosecution called Misti Carter, who testified about the shooting.  The prosecution also presented photographs of the injuries that the infant incurred that day and the damage the bullets caused to the vehicle.  Caleb Spence, a jail

---

[5]  Defense counsel estimated the sentence exposure at 178 years.

[6]  The court, in dismissing this attempted malicious wounding charge involving Casey Wimer, at first misstated the indictment number as CR17000106-01.  In fact, this indictment is numbered CR17000106-00, and the clerk of court verbally clarified on the record the number of the indictment being dismissed.  Mem. Supp. Mot. Dismiss Ex. C, at 28, ECF No. 30-3.

investigator, testified about twelve telephone calls that Wimer had made to various individuals while in pretrial detention.   According to Spence, Wimer asked his brother (Josh Wimer) about Stone Agnor, a man Casey Wimer had been dating, and then told Josh to "put a hole him." *Id.* at 46.   Spence also testified that Wimer said once he was home, "it's on sight," he's, quote, "firing one off" and stated that once released, "he's going to go right back to selling a lot of drugs and getting really high."   *Id.* at 47.   On cross-examination, Spence affirmed that only one of the monitored phone calls involved Mr. Agnor and that no evidence indicated that Josh Wimer had attacked Mr. Agnor.

According to Spence, Wimer also made calls to Josh and their mother, Shelia Wimer, advising them how to smuggle cans of snuff and some "strips" to him in jail.   *Id.* at 48.   Wimer apparently believed he could make money by selling these items to other inmates.   Spence testified that Wimer asked Josh to place the items inside a "Porter John at Gypsy Hill Park" near basketball courts.   *Id.*   Spence explained that Wimer asked to have such items "suitcased," meaning that the item should be taped up and smuggled inside the anus or vagina of a jail visitor.   *Id.* at 49.

The prosecutor then questioned jail official Wyatt Brown, who testified that from his review of investigation reports, he believed Wimer had been "intercepted and actually caught with some of the tobacco on his person."   *Id.* at 56.   On cross-

-8-

examination, Brown admitted that he had no personal knowledge that officials had found tobacco on Wimer and that he was testifying based solely on his recollection of investigative reports by other officers that were not in evidence or available to him in court.  The defense called several character witnesses, who testified about how involved Wimer had been with his children's activities and with the children of his siblings and neighbors.

In closing arguments, the prosecutor argued that Virginia's advisory sentencing guidelines were not helpful in a case like Wimer's that involved violent offenses.  He asserted that if the shots Wimer fired had been aimed only slightly differently, one or more of the car's occupants might have been killed.  The prosecutor's closing argument also contended that the evidence of Wimer asking his brother to kill his estranged wife's boyfriend and seeking family help to smuggle contraband into the jail indicated Wimer's lack of remorse and his dangerousness to the community.  The Commonwealth asked the court to impose 23 years of prison time.  *Id.* at 92.

Defense counsel countered that the prosecutor had created a "side show" with introduction of the jail telephone calls that had not been disclosed to the defense before sentencing.  *Id.* at 85.  Counsel pointed out that Wimer had no prior violent felony convictions, that much of his criminal history consisted of traffic violations or failures to appear, and that his prior court penalties had been mostly

fines or minimal or suspended jail sentences.  Counsel emphasized that the three misdemeanor charges on which Wimer had received jail time occurred years before the offenses at issue in this case.

Counsel also emphasized the lack of credible evidence showing that jail officials had discovered contraband on Wimer's person.  Counsel described Wimer as remorseful, quoting him as admitting that the shooting was "the stupidest thing he's ever done." *Id.* at 88.  The state sentencing guideline range was between three and seven years in prison.  Defense counsel argued that a sentence near the low end of this range (three to six years) would be fair for a defendant with a good history with children, a good work history, and no prior felonies.  Counsel stated, "[T]here is no evidence that Mr. Wimer knew there was a baby in the car," *id.* at 88, and "the baby had a cut from flying glass, not a bullet." *Id.* at 90.  He said a bullet's "copper jacket is what hit the driver of the vehicle in the scalp," not a bullet. *Id.* at 90.  Counsel argued that where victims had been injured by bullets, sentences could be only six to eight years, and urged the court to stay within the guidelines.

At his allocution, Wimer apologized to his wife and Christine, and to Misti for causing her to relive the incident by testifying in court.  Wimer said, "I understand what I did, I understand it's completely unacceptable and I understand that I am due for a punishment because of it." *Id.* at 93.  He went on, "I do have

children that I love dearly and they love their dad and I have done this to them and I just hope that the Court can find at least something that will let me raise my kids before they turn eighteen." *Id.* at 94.

> The trial judge then pronounced sentence, saying:

> I consider this to be a very aggravated case. First of all, you had a gun in your possession when your wife drove up. When you saw your wife, you took that gun out, you pointed it at the car and you fired it four times. At best you didn't know the child was in the car. At worst, you knew your wife was in the car because she stepped out of the car and got back in it and you knew that there was a driver in the car and that your wife wasn't the driver. Two individuals were injured. One could have been killed. The other and your wife and the baby, who knows what could have happened to them if the shots had gone all through the windshield into the car and struck an individual. When you got out and fired the gun, you got out, you took a police stance, you pointed it at the car and didn't fire once, you didn't fire in the air, you didn't fire to protect yourself, you fired at the car at the very least with the intention of damaging the car and without consideration of who you might have injured in the car, most likely you fired intending to hit your wife.

*Id.* at 94–95. The judge also said that Wimer had made more than idle threats to kill his wife's new boyfriend. The judge stated, "I don't know what happened with regard to the tobacco," but you tried to use "the area near the duck pond and the gymnasium" to accomplish contraband smuggling plans. *Id.* at 95. "It does not sound like to me you are as remorseful as you are attempting to tell the Court that you are." *Id.*

The judge sentenced Wimer to 15 years on each of the malicious wounding offenses, with five years suspended on each count. Wimer was also sentenced to

five years, with two years suspended, on the use of a firearm during a felony and to five years, with five years suspended, on the attempted malicious wounding conviction. As to each of the remaining three charges, the judge imposed "five years suspended." *Id.* at 97. In total, under the Sentencing Order, the judge imposed 53 years of prison time, with all but 23 years of that time suspended, and 30 years of supervised probation. *Id.* at 95–98; Mem. Supp. Mot. Dismiss Ex. A, ECF No. 30-1.

Wimer's counsel petitioned for an appeal to the Court of Appeals of Virginia under *Anders v. California*, 386 U.S. 738 (1967). Wimer also filed a pro supplement to that appeal. Mem. Supp. Mot. Dismiss Ex. D, at 24–49, ECF No. 30-4. Counsel's brief argued that the sentence imposed was longer that justified. The court of appeals determined "[t]he sentences that the trial court imposed were within the ranges set by the legislature" and according to the record, the trial court considered all evidence before rendering its decision, and therefore, did not abuse discretion in sentencing Wimer as it did. *Id.* at 51–52.

In Wimer's pro se supplement to the appeal petition, he contended that the trial court allowed evidence of a malicious wounding charge that was resolved as an assault charge. The appellate court rejected this claim because "the trial court was aware that the conviction was for assault and battery" and was entitled to consider Wimer's prior convictions at sentencing. *Id.* at 53.

Wimer also argued that the trial court allowed false testimony without evidence regarding whether Wimer possessed tobacco products in jail. The court of appeals found that the trial court acknowledged the uncertainty about Wimer's possession of contraband and, for sentencing purposes, relied instead on "the egregiousness of [Wimer's] act of shooting into an occupied vehicle four times and his lack of remorse." *Id.* at 54.

Wimer claimed on appeal that the trial court erred by sentencing him after he stated in open court that he was pleading guilty only because the prosecution had threatened to bring additional charges against him and his mother if he went to trial. Wimer also claimed that counsel was ineffective for failing to learn the facts before intimidating Wimer to plead guilty by advising him that otherwise he could face more charges and longer prison terms. The court of appeals ruled that claims about counsel's representation could not be raised on appeal. *Id.* at 55. The court further ruled that "fear of additional charges and mandatory prison time does not render [a guilty plea] involuntary." *Id.* at 55. The appellate court noted Wimer's confirmation "that he made the best decision that he could under the circumstances he faced" and held that he failed to move in the trial court to withdraw his guilty pleas at sentencing. *Id.*

Overall, the court of appeals found Wimer's "case to be wholly frivolous" because he had pleaded guilty to the indictments after they were read to him, and

he had acknowledged to the court his understanding of the charges and the elements that the prosecution needed to prove to convict him. *Id.* at 49. The court of appeals cited the trial court's reasons for finding Wimer's case to warrant harsh sentences and also found that Wimer "conceded that the Commonwealth's evidence . . . was sufficient to prove his guilt." *Id.* at 50. Wimer filed a Notice of Appeal to the Supreme Court of Virginia on January 30, 2019, but he did not thereafter timely file a Petition for Appeal, as required.

On December 17, 2019, Wimer timely filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Augusta County, CL190002627. The circuit court construed his claims as appearing to raise the following claims for relief:

> 1(a). That being convicted of two counts of Va. Code Ann. § 18.2-154, charging Malicious Shooting into an Occupied Vehicle, violates double jeopardy because the act was overt in geographic scope, timing, and the objective was the same. There was only one vehicle and the act was continuous. The charge is exactly the same with no variable the other does not have.

> 1(b). That the Virginia legislature only intended any defendant to be sentenced for a single count of section 18.2-154, and because Wimer was convicted and sentenced on two counts of said charge, his sentence violates his constitutional protection against double jeopardy.

> 2(a). That being charged with, convicted of, and sentenced for both section 18.2-53, charging shooting during the commission of a felony, and section18.2-53.1, charging use of a firearm during the commission of a felony, violated Wimer's constitutional protection against double jeopardy.

> 2(b). That the Virginia legislature's intent is ambiguous regarding the permissibility of a defendant to be convicted of and

-14-

sentenced for multiple firearms charges, specifically as it relates to being convicted of both sections 18.2-53 and 18.2-53.1.

3. That being charged with, convicted of, and sentenced for both section 18.2-51, charging malicious wounding of Christine Michelle Campbell, and section 18.2-53, charging shooting or stabbing Christine Michelle Campbell by malicious wounding, violated Wimer's constitutional protection against double jeopardy.

4(a). Wimer's trial counsel provided ineffective assistance because he failed to sufficiently meet with him and was unresponsive to his calls and claims of innocence.

4(b). Wimer's trial counsel provided ineffective assistance because he failed to conduct any pre-trial discovery by not obtaining pictures of the alleged wound or any pictures, documents, videos, or audio recordings.

4(c). Wimer's trial counsel provided ineffective assistance because he failed to file a timely motion to suppress.

4(d). Wimer's trial counsel provided ineffective assistance because he failed to investigate eyewitnesses to the crime and alibi witnesses identified by Wimer.

4(e). Wimer's trial counsel provided ineffective assistance because he misrepresented material facts by withholding information and exerting pressure on Wimer to plead guilty. Wimer "would not have pleaded guilty but for external circumstances such as coercion or poor and erroneous advice from counsel.

5. Wimer's trial counsel provided ineffective assistance because he allowed the prosecutor to assert unlawful, bad faith, and unwarranted pressure on Wimer.

6. Wimer's trial counsel provided ineffective assistance because he told Wimer that he risked being charged with three more counts of use of a firearm in the commission of a felony when Wimer had already received the cumulative punishment intended during one continuous act.

7. Wimer's trial counsel provided ineffective assistance because he misrepresented that Wimer's case was like a drug case where someone does four buys and they are charged with one and they are told if they don't plead guilty to one buy they are going to get charged with the other three, which prejudiced the trial and Wimer's decision to plead guilty.

8. Wimer's trial counsel provided ineffective assistance because he failed to file a motion to raise double jeopardy claims to bar a second count of shooting into the same vehicle.

9. Wimer's trial counsel provided ineffective assistance because he failed to argue double jeopardy from being charged with multiple firearms offenses and even encouraged Wimer's plea based on a chance he would be convicted of even more firearm charges.

10(a). Wimer's trial counsel provided ineffective assistance because he failed to obtain pre-trial and presentencing discovery, which allowed false testimony from Wyatt Brown and Caleb Spence, and accusations of alleged threats, to go unchallenged.

10(b). The prosecution improperly withheld evidence from the defense that would have impeached the false testimony from Wyatt Brown and Caleb Spence, and accusations of alleged threats.

11. Wimer's trial counsel provided ineffective assistance because he failed to obtain audio recordings of telephone conversation testified to at sentencing, which prejudiced him because a co-defendant received a reduction in his sentence based on such a recording.

12. Wimer's trial counsel provided ineffective assistance about how to withdraw a guilty plea, to move to correct an unlawful sentence, and to pursue an appeal.

13. The Commonwealth improperly threatened Wimer with additional charges, which induced him to plead guilty.

14. The Commonwealth failed to disclose witnesses or evidence for trial or sentencing, thus preventing effective defense preparation.

15. Wimer's guilty plea was not voluntary because he was improperly threatened into pleading guilty and because he was not made aware of the minimum sentences for the charges he faced.

16. The sentencing order misstates the charges for which the petitioner was convicted and the sentence imposed compared to the pronouncement of the trial court.

17. The prosecution failed to keep its promise as to which charges the petitioner would plead guilty.

18. Wimer's trial counsel provided ineffective assistance because he failed to argue that the court was to dismiss one of the malicious wounding charges but failed to do so.

Mem. Supp. Mot. Dismiss Ex. E, at 5–8, ECF No. 30-5 (cleaned up).

In an Order dated October 25, 2021, the circuit court dismissed Wimer's habeas petition. *Id.* at 32. The circuit court found that Wimer's claims were procedurally defaulted or without merit and that he had not shown ineffective assistance of counsel under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).

Wimer noted an appeal to the Supreme Court of Virginia regarding his habeas claims but mistakenly submitted the required petition for appeal to this court. The court conditionally filed that submission on February 28, 2022, as a § 2254 habeas petition and directed Wimer to submit a § 2254 form stating all of his habeas claims and supporting facts or to file an objection to the court's

construction of his submission as a § 2254 petition.   Wimer objected, this court stayed the federal habeas action, and forwarded Wimer's appeal petition to the Supreme Court of Virginia.   On November 30, 2022, the Supreme Court of Virginia refused Wimer's habeas appeal, finding no reversible error in the circuit court's rulings.   Mem. Supp. Mot. Dismiss Ex. D, at 139, ECF No. 30-4.

Thereafter, Wimer filed a Second Amended Petition (Petition) in this court. Liberally construed, Wimer's Petition asserts the following claims for relief:

(1) Wimer was offered an agreement to plead to seven of eight felonies with the state dismissing a malicious wounding.

(2) The prosecutor violated Wimer's rights to a fair and impartial trial, the right to due process, the 5th, 6th, and 14th amendments.

a. The prosecutor issued sentencing guidelines that were deliberately lower than called for.

b. The prosecutor never turned over any evidence to counsel, and counsel then had no evidence to show defendant.

c. The prosecutor told Wimer's counsel that if Wimer did not plead guilty, his mother would be arrested and new charges would be brought against Wimer.

d. The prosecutor entered into the plea agreement described in Claim 1.

e. The prosecutor misrepresented the amount of punishment Wimer faced.

f. The prosecutor failed to turn over evidence to the defense.

g. The Commonwealth testified the witnesses had never told a lie in their lives.

(3) The two convictions under section 18.2-154 for shooting into an occupied vehicle violate the protections against double jeopardy.

(4) The conviction under § 18.2-53.1 (for malicious shooting) should be a lesser included offense of the offense charged in the conviction under section 18.2-53 (use of a firearm to commit a felony), so the two convictions violate double jeopardy.

(5) The conviction under section 18.2-51 is for a lesser included offense of the offense charged in the conviction under section 18.2-53, where the victim is the same, so double jeopardy applies.

(6) Wimer's right to due process, fair trial, 5th, 6th, and 14th amendment rights were violated when the trial court allowed and accepted the guilty pleas because those pleas were not entered freely and voluntarily.

(7) Wimer's trial counsel provided ineffective assistance because he failed to meet with Wimer, could never be reached by phone, failed to conduct any pretrial discovery, never showed Wimer any evidence, and never obtained any statements, photos, or hospital records.

(8) Wimer's trial counsel provided ineffective assistance because he failed to investigate eyewitnesses to the crime and alibi witnesses identified by Wimer, failed to argue double jeopardy, misrepresented material facts by withholding information, and exerted pressure on Wimer to plead guilty.

(9) The sentences imposed exceed the sentences intended by the legislature.

Pet. Attach. 1–11, ECF No. 25-1.[7]

Wimer filed a responsive pleading, stating that he mailed his intended response to the Motion to Dismiss last year, but accidently used a Richmond,

---

[7] This summary of Wimer's federal habeas claims tracks the summary in the respondent's Mem. Supp. Mot. Dismiss 15–17, ECF No. 30, to which Wimer has voiced no objection.

Virginia, zip code.  The United States District Court for the Eastern District of Virginia received the submission and conditionally filed it as a § 2254 habeas petition.  A footnote in the conditional filing order case directed the clerk to forward a copy of Wimer's pleading to this court.  For whatever reason, this court did not receive a copy of this filing, but using online records, I have, nevertheless, reviewed the two-page pleading.  Wimer requests that I should consider it as his responsive pleading the habeas appeal petition that this court did receive and docket conditionally as the initial § 2254 petition in this case.  Accordingly, I have reviewed that submission.

## II. Discussion.

### A.

A federal district court reviewing a § 2254 petition is limited by the separate but related doctrines of required exhaustion of available state court remedies and procedural default.  These doctrines respect the state courts' role to provide "a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The petitioner bears the burden of proving exhaustion.  *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

Exhaustion requires a petitioner to present the facts and argument of his federal constitutional claims properly to the appropriate state courts up to the

highest state court with jurisdiction to address the claim.  *O'Sullivan*, 526 U.S. at

842.  When a petitioner has no more state remedies available, his claim has been

exhausted.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  It is contended that

Wimer's federal habeas claims are exhausted within the meaning of 28 U.S.C. §

2254(b) either because the claim was decided by the Supreme Court of Virginia in

state habeas proceedings or the claim was never presented to the Supreme Court of

Virginia, and under Virginia statutes, Wimer has no further state court remedy

available at this time.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

The respondent asserts that Wimer failed to properly exhaust Claims 2(a) and

2(e), alleging that the prosecutor did not state accurate sentence ranges applicable

to Wimer's offenses; Claim 2(g), alleging that the prosecutor said his witnesses

had never lied; and Claim 9, alleging that the imposed sentences are greater than

the legislature intended.[8]  Because these claims were not presented in state court,

they are unexhausted, but also procedurally defaulted under state law since Wimer

---

[8]  The respondent also argues that Wimer failed to exhaust the portion of federal habeas Claim 8 that alleges trial counsel was ineffective for failing to argue double jeopardy on unspecified grounds.  In fact, the state court habeas petition argued in Claims 8 and 9 that counsel was ineffective in failing to raise double jeopardy arguments regarding multiple charges of shooting into an occupied vehicle and regarding the prosecution's threat to bring multiple charges of use of a firearm in the commission of a felony.  Thus, I conclude that the generalized double jeopardy claim in federal habeas Claim 8 was arguably presented to the state courts in satisfaction of the exhaustion doctrine.  I will grant the Motion to Dismiss as to the double jeopardy portion of Claim 8 because it fails to allege any facts in support and thus fails to demonstrate that this issue provides grounds on which I could find that Wimer is confined in violation of his constitutional rights.

now has no available state remedy.  *Id.* at 162.  If the state law default that "gives rise to exhaustion provides an independent and adequate state-law ground" for dismissal of the federal claim, that default also "prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."  *Id.*

Wimer's Claims 2(c) and 6 are also unexhausted but procedurally defaulted. The issue in these claims was presented on direct appeal in Wimer's supplemental *Anders* brief that alleged the trial court erroneously accepted Wimer's guilty plea after Wimer stated he was "threatened into pleading guilty by charges that hold a greater amount of time."  Mem. Supp. Mot. Dismiss Ex. D, at 45, ECF 30-4.  The Court of Appeals of Virginia rejected Wimer's appellate claim on this issue. Because Wimer did not appeal the court of appeals' decision on the trial court errors alleged in federal Claims 2(c) and 6 to the Supreme Court of Virginia, he failed to present these issues to the highest available level of direct appeal as required for exhaustion.  *See O'Sullivan*, 526 U.S. at 842.

Where a petitioner has not exhausted his state court remedies on his claims, the federal court looks to the state law under which the state court would have ruled if given the opportunity. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).  The § 2254 exhaustion requirement is satisfied if it is clear the petitioner's federal habeas claims are now procedurally barred under state law from review on the

merits. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Moreover, federal review of such unexhausted, but defaulted claims is also barred, absent a showing of cause and prejudice. *Teague*, 489 U.S. at 297–98.

None of the post-conviction legal remedies that Virginia statutes offer remain available to Wimer to complete the exhaustion process on Claims 2(a), 2(c), 2(e), 2(g), 6, and 9. He cannot now pursue a direct appeal in the Supreme Court. Va. Sup. Ct. R. 5:17(a)(2) (requiring Petition for Appeal to be filed within 30 days after judgment from which petitioner is appealing from). Likewise, he cannot file a second state habeas corpus petition to present his unexhausted claims, because it would be dismissed as successive under Va. Code Ann. § 8.01-654(B)(2) ("No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition."). This state procedural rule is well established as an independent and adequate state law grounds barring federal habeas review. *Pope v. Netherland*, 113 F.3d 1364, 1372 (4th Cir. 1997). Therefore, federal Claims 2(a), 2(c), 2(e), 2(g), 6, and 9 are procedurally barred from federal habeas review.

Even where petitioner has exhausted his state remedies, federal review of his §2254 claims may be barred because petitioner has defaulted some state procedural rule during the process of exhaustion. Where petitioner has failed to comply with a state procedural rule and the state court has expressly relied on that procedural

default as an adequate and independent state law ground for denying relief on a constitutional claim, federal review of that claim is also procedurally barred. *Harris v. Reed*, 489 U.S. 255, 262 (1989). Wimer's federal Claims 1 and 2 fall into this category of defaulted claims.

Wimer alleges in federal habeas Claim 1 that the Commonwealth "offered an agreement to plead to seven of eight felonies with the state getting rid of a malicious wounding," but he contends that the prosecution did not comply with this agreement. Pet. Attach. 1, ECF No. 25-1. In federal habeas Claim 2(d), Wimer repeats the allegation that the prosecutor entered into the plea agreement described in Claim 1.

Wimer raised these same or similar issues in state habeas Claim 16, alleging that he agreed to plead guilty to most charges in exchange for dismissal of a malicious wounding charge that is not reflected in the Sentencing Order. The state habeas court found that these issues were procedurally barred by the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because breach of a plea bargain was a non-jurisdictional issue that Wimer could have raised at trial and on direct appeal and, thus, these claims were not cognizable in a state habeas corpus proceeding. Mem. Supp. Mot. Dismiss Ex. E, at 17–19, ECF No. 30-5. The holding in *Slayton* is well-established as an adequate and independent state-law ground for application of the federal procedural default rule. *Prieto v. Zook*, 791 F.3d 465, 468–69 (4th

Cir. 2015). Because Wimer did not raise the issues in federal Claim 1 at trial or on direct appeal, and the state habeas court expressly found them to be procedurally barred, this court is also procedurally barred from considering them on the merits. *Id.* at 468.

"A habeas petitioner can rescue his constitutional claim from procedural default if he establishes either 'cause and prejudice' for the default or that the default would yield a 'fundamental miscarriage of justice.'" *Id.* at 469 (citations omitted). Cause for procedural default requires the existence of some objective factor, external to the defense and not attributable to the petitioner. *Coleman*, 501 U.S. at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). To show a miscarriage of justice sufficient to excuse procedural default, a petitioner must present new, reliable evidence not presented at trial and show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). Wimer has made no such showings. Accordingly, I will grant the Motion to Dismiss as to federal Claims 1, 2(a), 2(c), 2(e), 2(g), 6, and 9 under the doctrine of procedural default.

B.

The state habeas court, in addition to finding that the issues in federal habeas Claim 1 (state habeas Claim 16) was procedurally defaulted, the court found that state habeas Claims 16 and 17 were without merit. I agree that these claims lack merit, based on the record.[9]

Close review of the state court records and pleadings in this case reflect several factual misstatements by the trial court, the state habeas court, the prosecutor, and counsel for the respondent in this court. First, at several points in the record, the trial judge and counsel referenced an Indictment involving the defendant's estranged wife, Casey, as a malicious wounding charge. As Wimer points out repeatedly, no such charge existed. Casey was not injured in the shooting. Rather, Wimer was indicted for the *attempted* malicious wounding of Casey Wimer. The state court records initially forwarded to this court did not contain a copy of this indictment, but the state court corrected that error and forwarded the court a copy of the Indictment charging Wimer with attempted malicious wounding of Casey Wimer. State court records online indicate that this

---

[9] State habeas Claim 17 alleged that the prosecution failed to comply with a supposed plea agreement as to the charges to which Wimer would plead guilty. Wimer makes similar allegations in federal habeas Claim 2(d). The respondent argues that the state habeas court dismissed state habeas Claim 17 as procedurally barred, but this assertion is not reflected in the state court's final habeas order. For reasons stated herein, I find that the state court dismissed Wimer's allegations in state habeas Claim 17 as without merit and that Wimer's federal habeas Claim 2(d) must also be dismissed for the same reason.

charge (described online as a charge of malicious wounding) was nolle prossed, and that Indictment number does not appear on the Sentencing Order.  Mem. Supp. Mot. Dismiss Ex. A, ECF No. 30-1.

Second, Wimer now alleges that there was a written plea agreement for him to enter guilty pleas to seven charges in exchange for dismissal of an unspecified charge for malicious wounding.  The record does not support this claim.  At the guilty plea hearing, Wimer affirmed his understanding to the court that no written plea agreement existed.  *Id.* Ex. C, at 17, ECF No. 30-3.  As discussed, Wimer declared his intent to plead guilty to seven charges, and the trial court read each of those seven Indictments into the record before Wimer entered a plea of guilty as to each of them without objection.  The plea colloquy reflects that Wimer knowingly and voluntarily pleaded guilty to the following seven charges: attempted malicious wounding of Misti Carter,[10] malicious wounding of the infant, malicious wounding of Christine Campbell, shooting of Christine Campbell during commission of a felony, use of a firearm in commission of malicious wounding, and two counts of

_____

[10]   In the Motion to Dismiss currently before me, counsel for the respondent asserts that Wimer pleaded guilty to a charge of attempted malicious wounding of Casey. On the contrary, the state court records and the respondent's own exhibits show that Wimer did not plead guilty to a charge of attempted malicious wounding against Casey. Mem. Supp. Mot. Dismiss Ex. C, at 7–10, ECF No. 30-3.  In fact, by mistake, the trial court read into the record Indictment No. CR17000106-00, which charged Wimer with attempted malicious wounding of Casey Wimer, and the prosecutor stated, "[T]hat's the only indictment to which he's not pleading." *Id.* at 7.  The prosecutor also declared the Commonwealth's intention to noll pross the indictment pertaining to Casey Wimer, although the court mistakenly referred to this charge as "one of the malicious woundings" and guessed incorrectly at to its indictment number. *Id.* at 3.

maliciously shooting into an occupied vehicle. *Id.* at 7–10. The circuit court records reflect that these charges were returned from the grand jury as Nos. CR17000106-01 to -07. Furthermore, these are the indictment numbers and charges that appear on the Sentencing Order as a list of the charges to which Wimer pleaded guilty, although the victims' names are not listed there. *Id.* at Ex. A, ECF No. 30-1.

Other than Christine Campbell and the infant, no one was injured in the shooting. Thus, no factual basis existed for a third malicious wounding charge involving Casey that could have been the basis of the purported plea agreement. The record clearly indicates that the plea bargain consisted of Wimer's guilty pleas to seven charges in exchange for dismissal of the only existing charge involving Casey Wimer (attempted malicious wounding) and the Commonwealth's agreement not to bring any further charges based on Wimer's use of the firearm. *Id*. Ex. C at 15, ECF No. 30-3 (regarding additional charges the Commonwealth could have brought absent the plea bargain). Despite the threat of additional charges, Wimer affirmed that his pleas were voluntary, "the best decision [he] could make" under the circumstances. *Id.* at 16.

Based on the foregoing, I conclude that Wimer's federal habeas Claims 1 and 2(d), alleging a plea agreement to dismiss a malicious wounding charge, are

without merit as contrary to the record.   Therefore, I will grant the Motion to Dismiss as to these claims.

C.

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)–(2).   In the context of federal habeas review, the question is not whether a federal court would reach the same decision as the state court or even whether the federal court believes the state court's decision is correct.   A petitioner must convince the federal habeas court that the state court's decision was unreasonable, "a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

> The term unreasonable refers not to ordinary error or even to circumstances where the petitioner offers a strong case for relief, but rather to extreme malfunctions in the state criminal justice system. . . . In other words, a federal court may intrude on a State's sovereign power to punish offenders only when a decision was so lacking in justification . . . beyond any possibility for fairminded disagreement.

*Mays v. Hines*, 592 U.S. 385, 392 (2021) (cleaned up).

    *1.  Federal Claims 2(b) and 2(f) — Failure to disclose evidence.*

    In federal Claims 2(b) and 2(f), Wimer contends that the prosecutor failed to turn over evidence to his defense counsel, such as photographs of the crime scene, statements by witnesses, victims, and police, and unspecified audio and video tapes and reports.  Wimer does not provide any specifics about these allegedly undisclosed items, or how they were favorable to his defense.  Pet. Attach. 3, 5, ECF No. 25-1.  He says the attorney sent him a list, but no actual items of evidence to review.  He also complains that without warning, witnesses at sentencing testified about his behavior in jail that the court interpreted as showing a lack of remorse.

    In state habeas Claims 10(b) and 14, Wimer alleged that the Commonwealth withheld unspecified evidence and did not inform the defense about witnesses expected to testify at the sentencing hearing about post-conviction conduct Wimer committed at the jail.  Wimer claimed that the witness testimony offered at sentencing was irrelevant, since it did not prove guilt and involved conduct after the charged offenses.  The state habeas court held that the defense failed to object to witness testimony presented at sentencing, such that alleged errors regarding those witnesses could not provide a basis for reversal absent good cause shown or to attain the ends of justice.  Wimer has not stated facts to circumvent this

procedural default of his federal claims.  Addressing the claim itself, the state court found that Wimer failed to offer what specific evidence the prosecution had withheld from the defense, Mem. Supp. Mot. Dismiss Ex. E, at 16 n.3, ECF No. 30-5, and that the Commonwealth's witness testimony at sentencing about Wimer's post-offense conduct at the jail was relevant because it tended to show Wimer's lack of remorse.  *Id.* at 17.

In state habeas Claim 14, Wimer alleged that the Commonwealth did not turn over evidence or witnesses for trial or sentencing.  The court cited Rule 3A:11 of the Rules of the Supreme Court of Virginia that does not require either party to disclose intended witnesses for sentencing.  *Id.*  The state habeas court construed both state Claims 10(b) and 14 alleging withheld evidence as arising under *Brady v. Maryland*, 373 U.S. 83 (1963), but held that *Brady* did not apply, because Wimer failed to allege withholding of any specific exculpatory evidence.  *Id*.

I cannot find that the state habeas court's dismissal of Wimer's *Brady* claims, based on incomplete and conclusory allegations that the prosecution withheld unspecified and nonexculpatory evidence, was an unreasonable application of clearly established law or an unreasonable determination of facts. Therefore, I will grant the Motion to Dismiss as to federal habeas Claim 2(b) and 2(f), pursuant to 28 U.S.C. § 2254(b).

2. *Federal Claims 3, 4, and 5 — Alleging Double Jeopardy.*

In federal habeas Claim 3, Wimer contended that convicting him under Va. Code Ann. § 18.2-154 for two counts of shooting at an occupied vehicle violated his right against double jeopardy. His theory was that the Virginia legislature intended this statute to cover one continuous shooting into one vehicle, regardless of the number of occupants. In federal habeas Claim 4, Wimer alleges that his conviction under section 18.2-53.1 for use of a firearm to commit a felony should be a lesser included offense of the charge under section 18.2-53 for malicious shooting. In federal habeas Claim 5, Wimer contends that his conviction under section 18.2-53, shooting to commit malicious wounding, should be a lesser included offense of his malicious wounding charges under section 18.2-51. The state habeas court rejected these claims to be without merit under state law. Mem. Supp. Mot. Dismiss Ex. E, at 13–16, ECF No. 30-5.

Moreover, these claims, concerning Virginia courts' interpretation and application of Virginia criminal statutes and the intent of the Virginia legislature in enacting and implementing those statutes, are not subject to federal habeas review. It is well established that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted). Rather, "it is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S.

1, 5 (2010).  It is the province of the state courts to decide the scope of the trial judge's authority under state law.  *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) (finding federal court is "bound to accept the [state] court's construction of that State's [criminal] statutes").  Based on the foregoing, I must grant the Motion to Dismiss as to Wimer's federal habeas Claims 3, 4, and 5.[11]

###### 3. *Ineffective Assistance of Counsel Claims.*

A petitioner must show (1) that counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In the context of an exhausted § 2254 habeas claim, review of counsel's performance is "doubly deferential," because the *Strickland* standard overlaps with the deferential standard under 28 U.S.C. § 2254(d).  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

To establish the element of deficient performance, a petitioner must state facts showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms."  *Strickland*, 466 U.S. at 688.  The reviewing court must not rely upon "the distorting effects of hindsight,"

---

[11]  The state habeas court also concluded that Wimer's state habeas claims alleging double jeopardy relating to the same sets of convictions were procedurally defaulted, because he failed to raise them at trial and on direct appeal, citing *Slayton*, 205 S.E.2d at 682.  Mem. Supp. Mot. Dismiss Ex. E, at 13, ECF No. 30-5.  Because Wimer has not presented any viable excuse for his default of these claims, this court is also procedurally barred from addressing them on the merits.

but must presume that counsel's decisions and actions fell within the wide range of reasonable strategic decisions. *Id.* at 689–90. Under § 2254(d), the performance question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard" of objective reasonableness. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citation omitted).

To establish prejudice, a petitioner must show that but for counsel's challenged conduct, there is a "reasonable probability that . . . the result of the proceeding would have been different," which means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the guilty plea context, the prejudice prong of the legal standard requires a petitioner to show a reasonable probability that but for counsel's allegedly deficient performance, the petitioner "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Because deficient performance and prejudice are "separate and distinct elements" of an ineffective assistance claim, if the petitioner fails to establish one of these elements, the court may dismiss the claim without addressing the other element. *Spencer v. Murray*, 18 F.3d 229, 232–33 (4th Cir. 1994); *Strickland*, 466 U.S. at 697. I will apply these deferential standards in reviewing Wimer's ineffective assistance of counsel claims, all of which were rejected by the state habeas court.

In a portion of federal habeas Claim 7, Wimer alleges that counsel provided ineffective assistance because "he failed to meet with [Wimer], could never be reached by phone," and more than 180 calls went "unanswered."  Pet. Attach. 10, ECF No. 25-1.  Wimer contends that this lack of communication "played a part in counsel's failing to conduct any pretrial discovery."  *Id.*  The state habeas court rejected this claim, finding that Wimer's evidence was contradictory.  Mem. Supp. Mot. Dismiss Ex. E, at 22, ECF No. 30-5.  Wimer alleged in his state petition that counsel did not visit or speak with him until the week of trial, but also stated that counsel met with him twice at the jail and met with him briefly before each court hearing.  The state court thus rejected this claim, finding that no "bright-line rule" exists concerning how often counsel must meet with a defendant to be considered effective.  *Id.* (citing *Moody v. Polk,* 408 F.3d 141, 148 (4th Cir. 2005).

I cannot find that this state court ruling was contrary to established federal law or based on an unreasonable interpretation of facts in the record.  Therefore, I will grant the Motion to Dismiss as to this aspect of federal habeas Claim 7 under 28 U.S.C. § 2254(d).

In another part of Claim 7, Wimer claims that counsel failed to mount a defense or to obtain or show him any "statements, photos, [or] hospital records" related to the charges, and failed to have the bullets tested or the bullet holes

investigated.[12]  Pet. Attach. 10, ECF No. 25-1.  In part of federal habeas Claim 8,

Wimer alleges that counsel failed to investigate eyewitnesses of the shooting and

alibi witnesses of which Wimer informed him.  *Id*. at 11.  In Claim 8, Wimer also

claims that counsel failed to obtain discovery pretrial and presentencing and that

these omissions allowed "false testimony" from sentencing witnesses Spence and

Brown.  *Id.*

Wimer's state habeas petition alleged in Claims 4(b), 4(c), and 4(d) that

counsel failed to mount a defense by failing to conduct pre-trial discovery and

investigate the charges, failing to disclose unspecified discovery, failing to

investigate or call unspecified witnesses or to obtain eyewitness statements, and

failing to move for suppression of unspecified evidence.[13]   Mem. Supp. Mot.

---

[12]   Wimer contends that further investigation by counsel would have revealed records concerning Wimer's abusive childhood; evidence that Misti Carter had been a police informant; evidence that Christine Campbell's family included deputies, allegedly creating a conflict of interest when other deputies testified against Wimer; and evidence that testimony about Wimer's attempts to smuggle drugs into the jail was false.  Pet. Attach. 10, ECF No. 25-1.  Wimer does not demonstrate that he submitted any of these facts to the state courts as required for exhaustion.  Therefore, I find them to be procedurally barred from review in his federal habeas case.  *Renzi v. Virginia*, 794 F.2d 155, 158 (4th Cir. 1986) (holding "State remedies are sufficiently exhausted when the state court is given a fair opportunity to apply controlling legal principles to the facts bearing upon . . . [a] constitutional claim by fair presentation of the substance of the federal claim") (internal quotation marks and citations omitted).

[13]   Wimer's federal Petition does not state facts to support his claim that counsel should have moved to suppress evidence, or even state what evidence he believes could have been suppressed or on what grounds.  As the state habeas court found, defense counsel's failure to file a timely motion to suppress was not, per se, ineffective assistance.  Mem. Supp. Mot. Dismiss Ex. E, at 24, ECF No. 30-5 (citing *Kimmelman v.*

-36-

Dismiss Ex. E, at 22, ECF No. 30-5.   Wimer claimed that counsel's failure to investigate witness accounts and talk to his client prevented him from learning the truth about the shooting or understanding how Wimer intended to fight the charges against him.   Wimer contends that he was on the left side of the car, but the driver was shot from the right side, that he smacked a gun from Casey's hands, and that the infant received only scratches from the shooting.

The state habeas court noted that Wimer had made statements to law enforcement officers, admitting that he had fired a weapon at the scene, although he claimed he was not aiming at anyone.  *Id.* at 23.   The court recognized that these statements restricted the defenses available to Wimer and limited the scope of necessary investigation by counsel.   The court concluded that under *Strickland*, counsel's decision to advise Wimer to plead guilty to certain charges was not unreasonable, given Wimer's statements, the physical evidence of the bullet holes in the vehicle and the damage they caused, and the substantial penalties Wimer faced, including the likelihood of further charges if the case went forward.  *Id*.

Counsel's "decision not to investigate must . . . be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to

---

*Morrison*, 477 U.S. 365, 384–85 (1986)).   The state court rejected this claim because Wimer failed to state facts on which counsel could have moved for suppression, that Wimer pleaded guilty stating that he was guilty and stated on the record that he was satisfied with counsel's representation.  *Id.*  I find no facts in the record on which Wimer could prevail in an ineffective assistance claim based on failure to file a suppression motion.

counsel's judgments." *Moody*, 408 F.3d at 148 (internal quotation marks and citation omitted). "Although counsel should conduct a reasonable investigation into potential defenses, *Strickland* does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help [his] client." *Tucker v. Ozmint,* 350 F.3d 433, 442 (4th Cir. 2003) (citation omitted). In Wimer's case, defense counsel reasonably could have concluded from the circumstances, including eyewitness testimony about Wimer firing into the car four times and Wimer's own admissions, that guilty pleas to seven of the existing charges to avoid the potential of additional charges offered Wimer the best outcome. At the plea hearing, counsel reasonably conceded that the Commonwealth's evidence was sufficient to support guilty findings on the seven charges to which Wimer was pleading. But counsel also offered the court an account of Wimer's perspective — feeling threatened by a vehicle that drove by his residence twice before pulling into the driveway and being unaware of who was in the car. Mem. Supp. Mot. Dismiss Ex. E, at 24–25, ECF No. 30-5. Counsel's actions contradict Wimer's claim that the attorney was not prepared for trial. Moreover, Wimer affirmed under oath that he was pleading guilty because he was guilty. *Id.* at 23.

The state habeas court found that given Wimer's statements to law enforcement and his voluntary guilty plea, it was not unreasonable for his trial

attorney not to call witnesses or otherwise present a defense for him. *Id.* (citing *Strickland,* 466 U.S. at 689) (holding counsel controls the case and decides best defense strategy). Specifically, the state court held:

> [M]ost importantly, [Wimer] fails to acknowledge that he chose to plead guilty after considering the additional indictments that could have been brought against him by the Commonwealth, the additional time those additional indictments would have added, and his potential exposure on the indictments already pending. He also fails to acknowledge his affirmation of satisfaction with his attorney when asked by the trial court. . . . He did not once inform the trial court that there were certain requests he had made of counsel, such as filing a motion to suppress, that counsel failed to complete, or how he may have been otherwise dissatisfied with his representation.

*Id.* at 24; *Id*. Ex. C at 19, ECF No. 30-3.

In light of Wimer's statements during the plea colloquy, the evidence against him, and the potential of additional charges and lengthy prison time on the charges to which he was pleading, his conclusory assertions ring hollow that with additional discovery or witnesses, he would have proceeded to trial instead. Rather, I find no reasonable probability that absent counsel's alleged shortcomings regarding investigation, Wimer would not have pleaded guilty. *Hill*, 474 U.S. at 59. Thus, I conclude that the findings by the state habeas court on these ineffective assistance claims were not an unreasonable application of *Strickland* and were not based on an unreasonable determination of fact.

In federal habeas Claim 8, Wimer alleges that counsel was ineffective by allegedly withholding information and pressuring Wimer to plead guilty. Pet.

Attach. 11. ECF No. 25-1.  Wimer also asserts that counsel's insufficient pretrial

investigation permitted the prosecutor "to assert unlawful, ill faith, and

unwarranted pressure" on Wimer.   *Id.*   Wimer contends that additional

investigation would have demonstrated that fewer than four bullets struck the car,

which would have resulted in fewer "convictions, less time, and a true image of

Wimer." *Id.*

Wimer's state habeas Claim 4(e) alleged that counsel coerced him into

pleading guilty.  In rejecting this claim, the state habeas court relied on the plea

colloquy, specifically Wimer's response that he had not been intimidated or

coerced to plead guilty, except by the potential for additional charges if he chose

not to plead.  Mem. Supp. Mot. Dismiss Ex. E, at 25–26, ECF No. 30-5.  At trial,

the court found Wimer's guilty plea to be knowing and voluntary.  The habeas

court recited the evidence the Commonwealth would have presented if the case had

gone to trial: Misti Carter's testimony about watching Wimer fire four times into

the car, corroborative physical evidence of the injuries two of the car occupants

suffered, and Wimer's own statements about his involvement.  The court found

that this evidence "suggest[ed] an overwhelming likelihood that the

Commonwealth would have prevailed beyond a reasonable doubt" at trial and that

counsel's advice about the advantages of the guilty pleas was reasonable.  *Id.* at 26.

The court also found that Wimer could not show prejudice under *Strickland* merely

by telling the court, after his statements during the guilty plea hearing, that with different advice, he would have preferred a trial. *Id.* at 25. I cannot find that these state court rules were contrary to federal law or based on an unreasonable finding of fact. *Christian v. Ballard*, 792 F.3d 427, 452 (4th Cir. 2015) (rejecting petitioner's belated habeas assertions about wanting trial and finding that state court could reasonably have rejected guilty plea challenge as not rational under the circumstances) (citing *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (holding that habeas challenge to guilty plea requires petitioner to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances").

In another portion of federal habeas Claim 8, Wimer complains that counsel was ineffective by analogizing Wimer's charges to prosecutions of drug cases. Wimer also voiced this contention in state habeas Claim 7, asserting that this analogy improperly influenced his decision to plead guilty and prejudiced the trial. The state court rejected the claim, finding that counsel used the analogy to help Wimer understand the Commonwealth's legitimate strategy of withholding some potential charges to facilitate plea bargaining. As did the state habeas court, I find that this ruling was not contrary to the *Strickland* legal standard as established federal law or that it was based on an unreasonable finding of fact.

Toward the end of federal Claim 8, Wimer claims that counsel failed to give him accurate information about his sentencing options without the plea bargain. In state habeas Claim 15, Wimer similarly alleged that counsel was ineffective in failing to notify him of the minimum penalties he faced on the pending charges. The state court found this assertion to be "categorically false," given discussions of potential sentencing penalties in Wimer's state petition and during the plea hearing and the sentencing hearing, without objection from Wimer. Mem. Supp. Mot. Dismiss Ex. E, at 31, ECF No. 30-5. Based on the same evidence, I conclude that the state court's findings were not contrary to federal law or based on an unreasonable interpretation of facts regarding information provided to Wimer about his sentence exposure.

Another portion of federal habeas Claim 8 alleges that Wimer's counsel was ineffective when he allowed "false testimony from Wyatt Brown and Caleb Spence" and failed "to obtain audio of the 'put a hole in him telephone call,'" which Wimer's co-defendant brother allegedly used to support a sentence reduction "[s]imply because the Judge could hear the content." Pet. Attach. 11, ECF No. 25-1 (cleaned up). The court notes that audio of these phone calls and details about the charges against Wimer's brother are not in the record.

In state habeas Claims 10(a) and 11, Wimer raised these same contentions, claiming that counsel should have obtained presentence discovery of the jail phone

calls about which Spence testified.  Wimer asserted that by doing so, counsel could have moved to exclude Spence's allegedly false testimony that affected the court's calculation of sentences.  In rejecting this claim, the state habeas court found Wimer had failed to establish prejudice under *Strickland.*  The court cited "factors announced by [the] Court that it considered in sentencing Wimer," such as the "'very aggravated' facts of the offenses themselves and the 'absolute threat' Wimer made to seek revenge on the man with whom his wife was allegedly in a relationship."[14]  Mem. Supp. Mot. Dismiss Ex. E, at 29, ECF No. 30-5.  Wimer provides no evidence that obtaining audio of the phone calls before sentencing would have provided grounds to exclude the calls or Spence's testimony about them as evidence with regards to sentencing.  I conclude that the state court's disposition of these issues was contrary to *Strickland* or based on an unreasonable determination of facts.

Another part of federal habeas Claim 8 alleges that counsel failed to advise Wimer how to withdraw a guilty plea or move for a correction of sentence.  Wimer asserts that counsel "certainly could have showed the Court the depiction of my pretrial ways was false and show I was remorseful."  Pet. Attach. at 11, ECF No.

---

[14]  I note here that Wimer has not provided this court with the audio of this call or any evidence whatsoever about the prosecution of his brother in which the same telephone call was allegedly a factor.  Certainly, Wimer fails to demonstrate that the brother faced circumstances like those that Wimer confronted at his trial for shooting four times at four people in a car or that the brother expressed any intention on the call to seek revenge.

25-1.  Wimer raised a similar contention in state habeas Claim 12, that counsel did not advise him about withdrawing a plea, correcting a sentence, or filing an appeal.

The state habeas court rejected this claim, based on Wimer's acknowledgement during the plea colloquy "that he understood that by pleading guilty, he was waiving his right to appeal the decision of the court except on jurisdictional grounds."  Mem. Supp. Mot. Dismiss Ex. E at 29–30, ECF No. 30-5 (cleaned up).  The court also noted that counsel filed a timely appeal as to sentence, pursuant to *Anders*, and that Wimer also filed a pro se supplement that the appellate court considered.  *Id*. at 30.  The state habeas court also noted that during allocution, Wimer made no mention of withdrawing his guilty pleas.  Rather, he stated, "I understand what I did, I understand it's completely unacceptable and I understand that I am due for a punishment because of it."  *Id.* at 31.  The state habeas court also found Wimer's sentences lawful, leaving counsel with no duty to move for correction of those sentences.  *Id.* at 30.

A portion of federal habeas Claim 8 alleges that Wimer's counsel was ineffective when he failed to argue for "fixing the broken plea deal."  Pet. 11, ECF No. 25-1.  Wimer contends that his sentence would be ten years shorter but for counsel's omission.  Wimer's state habeas Claim 18 argued that counsel was ineffective for failing to argue that as part of the plea bargain, the Commonwealth would move to nolle pross one of the malicious wounding charges but did not do

so.  The state habeas court rejected the claim as inaccurate, because at trial, "the single charge the Commonwealth noted they intended to nolle prosequi was in fact noll[e] prossed."  Mem. Supp. Mot. Dismiss Ex. E, at 32, ECF No. 30-5.

It is undisputed that one of the eight Indictments brought against Wimer, No. CR17000106-00, was dismissed as part of the plea bargain that he accepted at the plea hearing.  As discussed, inexplicably the attorneys and the court, in trial and habeas proceedings, in the respondent's federal habeas brief, and even in online digital court records, have referred to this Indictment as a malicious wounding charge regarding Casey, a charge for which there was no factual basis since Casey suffered no injury in the shooting.  Indictment CR17000106-00 clearly indicates a charge of attempted malicious wounding as to Casey Wimer.  Wimer did not plead guilty to this indictment and was not sentenced on that charge.  Furthermore, the trial court read into the record each of the seven charges to which Wimer did plead guilty, and he expressed his clear intention to plead to each of these charges, including two malicious wounding charges.  The plea hearing does not include any discussion by any party about dismissing the malicious wounding charges as to the infant or Michelle Campbell, both of whom suffered physical injuries in the shooting.  Thus, I find no factual support for Wimer's claim that counsel should have argued that the Commonwealth failed to comply with the plea bargain Wimer accepted.

In short, as to Wimer's claims that trial counsel provided ineffective assistance, the state habeas court found that he had not met the standard under *Strickland* required to show deficient performance of a nature to support a claimed constitutional violation and/or resulting prejudice.  As herein summarized, I have closely reviewed the state habeas court's findings on Wimer's ineffective assistance claims.  I find no factual basis on which to hold that the state court unreasonably applied federal law or unreasonably interpreted facts in reaching its conclusions that counsel's performance did not fall below an objective standard of reasonableness.  I reach the same finding as to Wimer's attempts to show prejudice resulting from counsel's alleged shortcomings.  I find no reasonable probability that absent counsel's alleged deficiencies, Wimer would have elected to forego pleading to seven of eight charges.  Had he done so, Wimer would have faced the likelihood of more than eight criminal charges and considerably more potential sentence exposure.  Moreover, despite his self-serving assertions that he intended to proceed to trial, he has not produced details about any non-frivolous defense that he could have presented to hope for a better outcome that he received through his knowing and voluntary guilty pleas.

## III. CONCLUSION.

For the stated reasons, I will grant the respondent's Motion to Dismiss.  I also decline to issue a certificate of appealability.

A separate Final Order will be entered herewith.

DATED:   September 30, 2024

/s/  JAMES P. JONES
Senior United States District Judge